UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPH FRANKLIN FEJERAN DRAKE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:13-cv-0961-TWP-DML |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER**

The Court conducted a bench trial in this action on December 7, 2015. The Plaintiff, Joseph Franklin Fejeran Drake ("Mr. Drake"), appeared in person and by counsel Andrew Campbell and Haroon Anwar.[1] Defendant, the United States of America (the "United States") was represented by counsel Jonathan A. Bont and Kathryn E. Olivier.

Mr. Drake is currently confined at the United States Penitentiary Cannan, but at all relevant times was in custody at the Federal Correctional Complex in Terre Haute, Indiana ("FCC-TH"). Mr. Drake brought this claim against the United States pursuant to the Federal Tort Claims Act (the "FTCA") for an injury to his right arm that occurred at FCC-TH. *See* 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671, *et seq*. Specifically, Mr. Drake cut his arm on his bunkbed frame after slipping on his cell floor in the Special Housing Unit (the "SHU") on May 16, 2012. He claims that staff at FCC-TH caused this injury by negligently placing and leaving him in an unsafe cell. The United States' motion for summary judgment was denied, (Filing No. 85), and efforts to settle the case were unsuccessful. After considering the evidence presented during the bench trial, the Court now issues its findings of fact and conclusions of law pursuant to Federal Rule of Civil

---

[1] The Court greatly appreciates the capable representation that volunteer counsel provided to the plaintiff.

Procedure 52(a)(1). Any finding of fact that is more properly considered a conclusion of law is adopted as such. Similarly, any conclusion of law that is more properly considered a finding of fact is adopted as such.

## I. FINDINGS OF FACT

On May 16, 2012, Mr. Drake was an inmate incarcerated in Cell Number 119, B-Range, which is located within in the SHU ("Cell No. 119"). The SHU is a segregation unit in which inmates are separated from the general prison population. For security reasons, inmates in the SHU are rotated every 21 days to different prison cells. Two inmates are usually assigned to each prison cell within the SHU, and the inmates are required to share a bunkbed, sink, and toilet.

Prison cells in the SHU are subject to regular inspections by prison officials. Inmates housed in the SHU are required to clean their prison cells, including the floor of their cell, on a daily basis with cleaning supplies provided by the prison. Prisoners who fail to properly clean or maintain their cells may face discipline or loss of privileges. Several years ago, at a different prison, Mr. Drake was disciplined for not having a clean cell. He learned his lesson with that experience and since that occasion, he has not been disciplined for failure to maintain a clean cell.

Inmates are provided a pink disinfectant solution for cleaning purposes, but the allotted amount is often insufficient for Mr. Drake's cleaning needs. Mr. Drake typically used soap or shampoo that either he or his cellmate purchased from the commissary to clean the walls, floor, urinal, and sink, thereafter, they would use the pink solution to disinfect.

Several bunkbeds in the SHU have metal cutouts where prisoners have attempted to craft weapons by cutting out pieces of metal from the bunkbed frames. Sometime prior to May 16, 2012, an unidentified inmate at FCC-TH cut out a section of the metal bunk bed in Cell No. 119. The prison paints the metal cutouts with orange spray paint so that it can track when the cutout

occurred. That way, a new inmate moving into a cell will not be disciplined for making the cutout. The purpose of the orange paint is for tracking purposes only, and is not intended for the safety of the prisoners. The prison does not repair bunkbed frames, including metal cutouts, unless the actual structural integrity of the bedframe is in question.

On or about May 14, 2012, Mr. Drake was placed in Cell No. 119. When he was placed in the cell, he noticed that the bunkbed had a 14-inch exposed metal cutout that was in the shape of a homemade knife. The exposed metal cutout was located on the bunkbed post frame approximately three to four feet off the ground, and was painted orange.

On or about May 16, 2012, Mr. Drake was cleaning Cell No. 119 in preparation for a weekly inspection by the prison's executive staff. He did not have enough of the pink cleaning solution at that time so he used shampoo to wash the floor of Cell No. 119. As he stood up from washing the floor, Mr. Drake slipped and lost his balance. As he fell, he struck his right forearm on the exposed metal cutout of the bunkbed frame.

Mr. Drake suffered a 4-inch cut on his right forearm. His arm bled for approximately 20 minutes. He was seen by medical staff about three hours later. A nurse cleaned the cut with saline, bandaged the cut, and gave Mr. Drake a tetanus immunization shot. He was given bandages and ointment to cover the cut. Mr. Drake still has a visible 4-inch scar on his forearm.

Mr. Drake is a diabetic who receives regular insulin treatments. As a diabetic, he is concerned about germs and infection because it takes extra time for any wound to heal. If the wound to his arm were not properly treated it could have become infected and he feared he could lose his arm. He washed the wound every day with soap and it did not get infected.

Following Mr. Drake's injury, on June 7, 2012, Bradley Linton, the SHU facilities maintenance person at the time, repaired the bunkbed by grinding down the sharp edges of the

exposed metal cutout with an electric grinding wheel. The repair took approximately three hours to complete and the cost of materials used was $6.00.

Mr. Drake exhausted his administrative remedies before timely filing this lawsuit.

## II. CONCLUSIONS OF LAW

Under the FTCA, "federal inmates may bring suit for injuries they sustain in custody as a consequence of the negligence of prison officials." *Buechel v. United States*, 746 F.3d 753, 758 (7th Cir. 2014). State tort law of the state where the tort occurred, in this case Indiana, applies when determining "whether the duty was breached and whether the breach was the proximate cause of the plaintiff's injuries." *Parrott v. United States,* 536 F.3d 629, 637 (7th Cir. 2008).

Under Indiana law, a "plaintiff seeking damages for negligence must establish (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Kader v. State Dept. of Correction,* 1 N.E.3d 717, 727 (Ind. Ct. App. 2013). Under Indiana law, when a party is in custody, "the custodian has the duty to exercise reasonable care to preserve the life, health, and safety of the person in custody." *Sauders v. County of Steuben,* 693 N.E.2d 16, 18 (Ind. 1998). "The appropriate precautions will vary according to the facts and circumstances presented in each case." *Id.* The duty is to "take reasonable steps under the circumstances" to protect an inmate from harm. *Id.*

The duty owed by the United States is also created by 18 U.S.C. § 4042, which provides, in relevant part, that the Bureau of Prisons ("BOP") shall "(2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, . . . ; [and] (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States...." 18 U.S.C. § 4042(a)(2), (3). Although written in general terms, the statute "sets forth a mandatory duty of

care." *Parrott,* 536 F.3d at 637 (internal quotation omitted). Thus, the determinative issue is whether the BOP took reasonable steps under the circumstances to provide Mr. Drake with suitable quarters to preserve his health and safety.

The Court finds that the United States failed to act with reasonable care when it placed Mr. Drake in Cell No. 119 with the knowledge that the metal bed frame contained a sharp cutout area. Mr. Drake had no control over the assignment to Cell No. 119, nor did he create the metal cutout on the bed frame. The cutout area was painted orange for purposes of tracking. Simply painting a dangerous object orange does not remove the danger. Prison officials acknowledged that they were aware of the cutout area, but they did not deem it necessary to repair the sharp edges because the structural integrity of the bed was not threatened. The fact that the bed was not about to fall apart, however, does not negate the existence of the jagged metal edge.

The United States has failed to acknowledge throughout this case that it breached its own duty to provide reasonably safe quarters for Mr. Drake. The United States instead argues contributory negligence and asserts that Mr. Drake's injury was caused by his own act of washing the floor with shampoo and slipping on the wet floor. The United States' position is not persuasive. In part because he is diabetic, Mr. Drake understands the importance of keeping his cell clean. Further, he wants and is obligated to keep his cell floor clean. When he is not provided sufficient cleaning supplies he must use other cleaning products of his own. Regardless of what product was used, the wet slippery floor caused the fall, but the wet floor did not cause Mr. Drake to be injured. It is reasonable to believe that if Mr. Drake's forearm had not struck the jagged piece of metal, he would not have sustained an injury when he lost his balance. He certainly would not have suffered a 4-inch cut that left a scar. The injury was caused by the sharp metal bed frame. Accordingly, the Court finds no contributory negligence on the part of Mr. Drake.

The United States urges the Court to infer a sinister motive on the part of Mr. Drake for having filed this claim (and a subsequent tort claim for another cut to his hand which occurred on October 4, 2012). However, there is no evidence to support any motivation on the part of Mr. Drake other than wanting to bring more attention to the fact that many cells in the prison have bed frames that have dangerous cutouts that are marked with orange paint but not repaired, and his desire to be compensated for his injury.

Mr. Drake's position has been reasonable throughout. He did not "manufacture" this lawsuit. Mr. Drake was making reasonably foreseeable attempts to keep his cell clean. His health concerns as a result of being diabetic are genuine and reasonable. Mr. Drake has not exaggerated his injury nor has he demanded an excessive amount of compensation for his injury.

The United States breached its duty of care and Mr. Drake was injured as a result. Therefore, he is entitled to damages. Although the cut did not require substantial treatment, it needed to be cleaned properly and bandaged and kept clean to avoid infection. Mr. Drake is diabetic and his concern regarding proper cleaning and healing of the injury was reasonable. A tetanus shot was also deemed to be warranted. Of greatest significance is the fact that Mr. Drake still has a 4-inch scar on his arm.

Mr. Drake's injury was not *de minimus.* Slip and fall negligence awards in Indiana fall within a wide range depending on the seriousness of the injuries and the degree to which the plaintiff is found to be negligent. Here, the plaintiff was not contributorily negligent. The "slip and fall" claim damages awarded in *Reeves v. Finley,* 45D11-0301-CT-6, 2006 WL 6861633 (Ind. Super. Ct. 2003) ($44,000.00 for bulging disc and buttock contusions) and *Williams v. Smokes, Inc.,* 45D05-9908-CT-1415, 2003 WL 25974438 (Ind. Super. Ct. 2003) ($38,000.00 for arm fracture and minor injuries, reduced to $19,380.00 for plaintiff's 49% negligence) support an

award of Ten Thousand Dollars ($10,000.00) in this case. Although Mr. Drake did not suffer any fracture, a 4-inch scar remains clearly visible on his forearm, three and one half years after the incident.

### III. CONCLUSION

For the reasons stated above, the Court finds in favor of Mr. Drake and against the United States. Mr. Drake is hereby awarded Ten Thousand Dollars ($10,000.00) in damages.

Judgment consistent with this Entry shall now issue in a separate order.

**SO ORDERED.**

Date: 12/29/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Andrew Lorin Campbell
FAEGRE BAKER DANIELS LLP – Indianapolis
andrew.campbell@bakerd.com

Haroon Anwar
FAEGRE BAKER DANIELS LLP – Indianapolis
haroon.anwar@faegreBD.com

Jonathan A. Bont
UNITED STATES ATTORNEY'S OFFICE
jonathon.bont@usdoj.gov

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov